## VIOLATION BY STRIKERS OF ORDER OF INJUNCTION.

[Franklin County Court of Common Pleas.]

THE L. HOSTER BREWING COMPANY v. MICHAEL J. GIBLON ET AL.

Decided, April 9, 1903.

*Injunction—Against Interference With Operation of Plant or Business by Striking Workmen—Nature of Interference Proven—Punishment Imposed.*

An order of injunction, forbidding in broad language all forms of interference with the operation of plaintiff's factory or business, but properly protecting the rights of the defendants, was disregarded by striking workmen, who were brought in under rules to answer as in contempt.

The evidence showed that G ran a wagon across the passageway leading to the plaintiff's factory, and seizing the reins stopped a team and wagon being driven there through, and used abusive and threatening language toward the driver: Fined $50, with ten days in jail; jail sentence suspended, unless it should be found necessary to enforce obedience to the injunction.

While strikers were congregated in the passageway a team was driven rapidly through, and B attempted to grab the reins and was struck and injured. He claimed to have been only seeking to protect himself, and it appeared that the order of injunction had not yet been served upon him: Dismissed.

M also grabbed the reins and stopped a team. He claimed to have acted for self protection, but the evidence showed that he had an abundance of time to get out of the way: Fined $25, with ten days in jail; jail sentence remitted.

BIGGER, J.

A few days ago application was made to this court for an injunction restraining the defendants named from the commission of unlawful acts which it was alleged they were committing in violation of the property rights of the plaintiff. An injunction was allowed and since that time complaint has been made in writing to this court that certain of the defendants therein named have been guilty of the violation of the order, and a rule was asked requiring them to show cause why they should not be punished as for a contempt of the order of the court. Three of the cases have been heard.

From the evidence it appears that the defendants, together with a large number of others, have been in the employment of

the plaintiff and that some disagreements having arisen between the plaintiff and its employes—the employes are no longer in the employment of the plaintiff. Whether they have left their former employment of their own volition or whether it is what is commonly called a lock-out does not appear, nor is it of any importance or materiality so far as the questions before this court are concerned.

I will not undertake to state the averments of the petition in these cases as it would extend this opinion to an unreasonable length, and so far as the question before the court upon this hearing is concerned it is not necessary, for there is no claim that the injunction is not warranted by the averments of the petition or that it is in its terms too broad or conflicts with any of the rights of the defendants in the premises. The only question before the court is whether these individual defendants have been guilty of a violation of the terms of the restraining order.

That order is as follows, omitting the formal parts of it: That the defendants and each of them be enjoined from in any manner interfering with the persons or any person in the employ of plaintiff; from in any manner interfering with any persons who may desire to enter or remain in the employment of plaintiff, either by way of threat, violence or intimidation; from congregating, loitering about or in the neighborhood of plaintiff's brewery or bottling works, with intent to interfere with employes of plaintiff in any wise, either while they are at work or on their way to and from their work, and with intent to interfere with or obstruct in any manner plaintiff's trade or business; from in any wise interfering with any person or persons who may be delivering or hauling the product of the plaintiff; from interfering with the free access of plaintiff's employes and with their return to their homes, boarding places or other places to which they may desire to go; from gathering at the approaches to or in and about plaintiff's factory, and interfering with or hindering the free conduct or control of plaintiff's business or property.

As to the law upon the subjects of the rights of employers and employes in cases of this kind there is really no room for dispute. Probably no branch of the law is more clearly settled and the rights of the respective parties defined by judicial decision than in this class of cases.

In the case of *The Union Pacific Railway Company* v. *Ruff,* 120 Fed. Rep., p. 102, Judge McPherson says in his opinion on page 106, after citing a long list of decisions both federal and state—

"These authorities can not be reviewed within the limits of an opinion of reasonable length. The rules to be deduced, with but a single exception, can not be in any doubt and the authorities are not in conflict. And it does not matter whether we turn to the English cases or the federal cases decided by the circuit and the decisions of the appellate courts of the United States and the supreme courts of the several states, or to the text books old or modern, we find a uniformity so remarkable as seldom to be found in other branches of our jurisprudence. They are all in favor of the rights of contract of freedom of the rights of property and that no man or combination of men shall be allowed to interfere with another man, partnership or corporation. The courts can not hope to entirely foreclose discussion of these questions. But discussion is already nearly at an end by the courts and by those having the slightest knowledge of jurisprudence. Capitalists and employers of labor and employes alike must understand that they must go elsewhere than the courts for other results. * * * * Capital or labor may in one case or in another dominate the other, but in the end right and justice will dominate both. And what is right and what is justice will be decreed by a tribunal by whatsoever name having chancery powers. The principle of contract and property rights will not be destroyed and labor will not be reduced to slavery and the public will not be ridden down for want of tribunal, and that tribunal may be called by one name or by another, and it may be presided over by a man called judge, or a chancellor, or an arbitrator, but such a tribunal will have chancery powers and with all the powers developed by the growth of equity jurisprudence for the last two hundred years and the growth yet to come."

I have been quoting from the language of the judge rendering the opinion.

It is the peculiar province of a court of equity to interpose for the protection of property rights when they are threatened. It is not within the province of a court of equity to enjoin the mere threatened commission of a crime, unless the act, which is criminal, will result in the destruction of property, and the right of the plaintiffs to conduct their business is a property right. The injunction in this case does not prevent the defendants from doing anything which they have a right to do under

the law. In view of the situation now existing, and in view of the fact that there is probably some misunderstanding as to the extent of the rights of the defendants, I think it well to elaborate a little upon the subject. Whether the defendants here and their fellow employes have left the service of plaintiff of their own volition, or whether they have been discharged, which, as I say, the proof does not show, their rights after leaving that employment are the same. They have a right to refuse to work upon the terms offered, whatever these terms may be, and they have a right to unite themselves together for the purpose of obtaining better conditions of employment, and they have a right to use all peaceful means to that end. This right may be exercised by argument or persuasion to induce others to refrain from taking their places. To that end they have a right to maintain a patrol or picket of such persons as they may detail from their number for the purpose of observing who go to and from the factories of the plaintiff, to enable them to exercise the right which they have of trying to persuade other men from taking their places in the employment of plaintiff. But their right is strictly limited to the use of peaceful means and agencies to that end. These defendants being no longer in the employment of the plaintiff, can not again enter its employment except by mutual agreement of the parties. The plaintiff upon its part has the same freedom of choice under the laws. It may again employ the defendants or employ others in their places. Whatever difference of opinion there may be as to the propriety or policy of other men taking the places of men on strikes, yet under the law that right is clear and undisputed, and there never was a decision by any court to the contrary. Nor can the plaintiff be interfered with in that right in any manner, except as I have already stated, peaceful persuasion of those who are about to take such employment. But in the use of arguments and persuasion the defendants have absolutely no rights under the law to use any force or violence or intimidation. If the plaintiff is successful in securing other men to take the places of its former employes the defendants have no right to intimidate them by threats or show of force which may amount to intimidation. Such persons in the employ of the plaintiff have a right to go to and from their work without fear or molestation. Nor must it be supposed that only acts of

physical violence are unlawful. It is unlawful to interpose in the path of persons engaged in the conduct of plaintiff's business in such numbers as in itself to amount to intimidation. That is, the rights of persons engaged in the service of plaintiff to pass freely and unmolested along our streets is just the same as that of the defendants themselves. Nothing more and nothing less under the law, and when anything is done which amounts to intimidation of such persons, whether by physical force or by so-called persuasion carried to the extent of intimidation, it places the person engaged in it in the position of violating the rights of such other person, and is a violation of plaintiff's rights and of the injunction in this case.

I need hardly say that the placing of obstructions to the ingress and egress of plaintiff's wagons to and from its factories is a violation of plaintiff's rights, and can not be permitted. Of course, it is impossible for courts to state in detail the acts which will or may amount to a violation of the plaintiff's rights, and therefore a violation of the injunction. But the intelligence of the defendants in this case is sufficient to enable them to determine whether any course of conduct upon their part amounts to violence or intimidation of persons in the employ of plaintiff. I am satisfied from the evidence that good advice has been given to the men engaged in the strike by members of their own organization, which, if it were observed, would make such proceedings as this in court unnecessary. In times of public excitement, such as this, lawless and irresponsible men and mere boys take advantage of the occasion offered to commit acts of violence and to create disorder. When such a condition arises, it is the duty of the defendants not only not to encourage such conduct on the part of others, but to refrain from taking any part in them, but to discourage, and, if possible, prevent it. There are quite a number of reported cases decided by the courts of this state, which I will not undertake to cite and discuss, but from an examination of them I find that there is no question but that the law is as I have stated it. Indeed the decisions in all the states so far as my examination goes are in substantial accord.

Coming then to a consideration of the facts presented here, and first as to the complaint filed against the defendant Giblon. It is charged that the defendant interfered with the hauling of plaint-

iff's products from the brewery and would not permit the persons hauling it to proceed further, and it is alleged generally that he interfered with the conduct and control of plaintiff's business. The evidence leaves only one conclusion possible in this case, and that is that the defendant Giblon is guilty of the charge. It is in evidence, and not denied by the defendant or any one else, that he placed an obstruction, being a wagon, across one of the passage-ways leading to plaintiff's factory as plaintiff was about to send out its wagon, which precluded the passage of horse and wagon in that direction. Several witnesses testified that he grabbed the reins or lines as the driver was attempting to drive the team from plaintiff's premises, stopped the team, and that he used violence and abusive language to the driver. This is also practi-ally without denial. It is true one witness testified that he, the witness, grabbed the lines, but whether that is true or not it can make no difference if the defendant himself was doing this, that some person else was also doing the same. The defendant is, therefore, clearly guilty of a violation of the order. He did not take the stand in his own behalf. And if he could not consci-entiously deny the statements of the witnesses who testified against him, it is entirely to his credit that he did not take the stand and make a false statement under oath.

Now, when the application for an injunction was made in this case, I was asked to make a much broader and more sweeping order than was made. I felt the prayer of the petition could not be granted to the extent that the plaintiff desired, as in my opinion it would be an invasion of the defendants' rights, and upon a careful examination of the authorities I am satisfied that the order issued violates no right of the defendants, but preserves to them every right which they may have under the law. That being true, it is the duty of this court to uphold that order by all the power at its command. A court which would fail to uphold its order and decrees made for the protection of property and property rights would merit the contempt of all law-abiding citizens. And I want to say now, and say it so that there may be no misunderstanding about it on the part of any one, that this court will uphold its lawful orders and maintain the dignity of the court and the supremacy of the law by all the means at its command, which are found necessary to accomplish that object.

This does not mean that the court will be arbitrary in the imposition of penalties. I have not the slightest disposition to inflict greater penalties than may be found necessary to accomplish the object sought and secure the observance of the order. But at the same time it must not be thought that the violation of the order of a court, charged by law with the performance of this very duty, can be treated as a light matter. The court will, therefore, in this case impose a fine of fifty dollars and imprisonment in the county jail for ten days. I will, however, remit the jail sentence at this time. But I want to say plainly that if it is found that imprisonment is necessary to enforce this order, the court will not hesitate in the discharge of its duty to make imprisonment a part of the penalty. The order as to the payment of the fine is that the defendant be committed until the same is paid, unless sooner discharged by operation of law.

As to the case against John Bauer the evidence shows that he was in a crowd in and about the gate to plaintiff's premises when a wagon belonging to the plaintiff was driven out of the gate at a very high rate of speed, and that he was struck by it and knocked down and considerably injured. The testimony of some of the witnesses to the transaction is that the defendant made an effort to grab the horses or wagon, or both, as it went by him. The defendant very earnestly denies this, and says all he did was to endeavor to protect himself from injury. Upon the evidence in this case I am in doubt, and think I should give the defendant the benefit of it. There was undoubtedly great excitement there, and there might have been a mistake as to what he was doing just at the time he was struck. He claims the wagon was driven at a very high rate of speed and swerved towards him and he was struck. In that connection also I wish to say that the conduct of plaintiff in driving wagons out of its premises at such a rate of speed, if it was unnecessary, is reprehensible. There should be no effort to drive over or through a crowd standing in the way in such a manner as to injure the lives or limbs of those in the way, even though they may be violating the law. It is the duty of the officers of the law to compel such crowds to disperse, and to furnish to the plaintiff whatever protection is necessary against the lawless acts of men who congregate so as to interfere with plaintiff's business, and they should

demand and rely upon it, and not themselves attempt to commit any breach of the peace. The evidence does not show that this defendant stopped the wagon, nor indeed is it clear whether he actually had hold of it or not. Furthermore the sheriff's return, and I may say now the evidence, shows that the defendant John Bauer was not served with the order of injunction until three o'clock of Saturday afternoon. The evidence fails to show that he had been served with the order of injunction prior to the occurence complained of, and, of course, he could not be held for contempt of court unless this was shown. It was at some time during the afternoon as I recollect, or the morning of Saturday. The finding, therefore, must be that this defendant is not guilty, and he should be discharged.

As to the defendant, Joe Morrow, I find from the evidence that he is guilty of a violation of the court's order. The evidence shows that he grabbed the horses by the head as they attempted to leave the gate. To ask the court to accept the claim made here that he was only trying to protect himself is to ask me to do violence to my own judgment. The team started at least one hundred feet from the defendant and started straight towards him, and it was his duty to get out of the way and let the team pass out without molestation. I can not accept the claim that he was only trying to protect himself when he caught the horses. That claim might be made in any case, and, if accepted, would be sufficient to excuse any violation almost of the order of injunction. The evidence does not show him to have been so active in the matter as the defendant Giblon, but he was obstructing the progress of plaintiff's team.

The order of the court in this case is that the defendant, Morrow, be fined $25 and the costs, and be imprisoned in the county jail for ten days. As in the other case, I will, for this time, remit the jail sentence, but it is ordered that he be committed until the fine and costs are paid or is sooner released by operation of law, and I want to again repeat what I said before, that because, upon these first arrests, I did not impose an absolute jail sentence, that it is not to be understood that that course will be followed hereafter if there are continued violations of the order.

*Gumble & Gumble,* for plaintiff.

*George W. Bope,* for defendant.